**FILED**
**May 13, 2024**
**12:45 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT GRAY

| | | |
|---|---|---|
| **KAMDEN MCLEOD,** | ) | **Docket Number: 2023-03-00663** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 860055-2023** |
| **VALET GUYS OF KNOXVILLE,** | ) | |
| **LLC,** | ) | **Judge Brian K. Addington** |
| **Employer.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an expedited hearing on May 2, 2024, on Mr. McLeod's requests for medical and temporary disability benefits for his December 2022 work injury. Valet Guys disputed that Mr. McLeod's current condition is related to his injury. For the reasons below, the Court holds Mr. McLeod is entitled to the requested medical treatment, including surgery, and temporary total disability benefits.

### Claim History

Mr. McLeod slipped on asphalt and injured his right arm and shoulder at work on December 28, 2022. Valet Guys accepted the claim, and Mr. McLeod received medical treatment from Dr. Joshua Moss, who repaired Mr. McLeod's torn rotator cuff and bicep tear.[1]

After surgery, Dr. Moss ordered physical therapy, but Mr. McLeod continued to experience pain. He returned to Dr. Moss and reported hearing a pop in his shoulder while showering. Dr. Moss's nurse noted an abnormality in his bicep and ordered an MRI. At first, the radiologist who read the MRI and Dr. Moss disagreed on the results. The radiologist initially diagnosed a recurrent rotator cuff tear, but after discussing the MRI with Dr. Moss, they concluded no retear occurred.[2] Dr. Moss recommended additional

---

[1] The parties agreed that Valet Guys paid medical and temporary disability benefits and/or regular wages through May 31, 2023.

[2] The MRI report was amended and stated, "no recurrent rotator cuff tear" in the addendum.

physical therapy and continued five-pound lifting restrictions. Valet Guys continued to pay medical benefits until Mr. McLeod moved to North Carolina.

In North Carolina, Mr. McLeod attended three physical therapy sessions and sought treatment from Orthopedist Dr. Eric Lescault on his own.[3] Dr. Lescault ordered a CT arthrogram scan and thought Mr. McLeod may have another rotator cuff tear. He suggested surgery to rule it out or repair the tear. He also restricted Mr. McLeod from work on July 31, 2023, until his next examination or surgery was performed. Mr. McLeod testified that he was unable to return to Dr. Lescault for financial reasons and Valet Guys declined to pay for the treatment.

Although Valet Guys provided work or continued his wages until May 31, it terminated Mr. McLeod in January, when he crashed a van at work. After the accident was reported, Mr. McLeod denied that he was responsible. Valet Guys obtained video of the incident, which showed that Mr. McLeod crashed the van. Mr. McLeod continued to deny the incident after Valet Guys showed him the video, so Valet Guys terminated him.

During the expedited hearing, Mr. McLeod testified that his injury has kept him from working. He had planned to start working for FedEx in North Carolina, but his injury prevented it. He stated he has been unable to work since he moved, that his arm is disfigured from the injury, and he has constant pain.

Jerry Kruse, co-owner of Valet Guys, testified that it stopped paying medical benefits because he was not going to approve treatment without getting copies of Mr. McLeod's medical records. He wanted the records to determine if Mr. McLeod had reinjured his arm by lifting heavy items during his move to North Carolina. He felt Mr. McLeod had a new injury.

In preparation for the hearing, the parties deposed both Drs. Moss and Lescault.

Dr. Moss did not diagnose a recurrent tear. He testified that the MRI findings were "typical postsurgical," and that Mr. McLeod had an "intact repair." When asked whether Mr. McLeod had suffered a new injury or if his pain was the result of his previous surgery, Dr. Moss responded, "it could be either." He added, "It could be something as simple as reaching out to steady [himself] getting out of the shower, something like that."

Dr. Lescault testified,

---

[3] Mr. McLeod first saw Dr. John Azzato on June 13. Dr. Azzato referred him to Dr. Lescault's office and restricted him from work beginning June 13 through June 30. Valet Guys did not pay for the physical therapy or doctor visits.

[W]e have a pretty good idea from the CT arthrogram that there's a recurrent tear, and that tear could be a non-healed portion of the cuff repair, if could be a propagation of the previous tear, which means the tear got bigger, or it could even be a new tear adjacent to the repair.

He stated that surgery was warranted when a patient continues to have pain 12 weeks after surgery, as in Mr. McLeod's case.

### Findings of Fact and Conclusions of Law

Mr. McLeod must prove he is likely to prevail at a final hearing on his requested benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2023); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Tennessee Workers' Compensation law requires an employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A).

Valet Guys did not offer Mr. McLeod a panel of physicians when he was in Knoxville or North Carolina. Therefore, the presumption on causation for panel physicians under section 50-6-102(12)(E) does not apply.

Valet Guys theorized that Mr. McLeod suffered a new injury by lifting heavy objects when he moved. Mr. McLeod testified that he did not, and Valet Guys offered no direct testimony or medical proof to contradict him.

Rather, at this point, both doctors have differing opinions of what caused Mr. McLeod's current condition. It could be something as simple as reaching out his arm. Dr. Moss relied solely on the MRI showing no new tear, and he and the radiologist originally disagreed about a recurrent tear. Dr. Lescault requested an additional test, which in his opinion shows another tear. Because Dr. Lescault based his opinion on more complete information, and because he stated that after 13 weeks, Mr. McLeod should not be having pain after surgery, the Court credits his testimony over Dr. Moss's.

For these reasons, the Court concludes Mr. McLeod is likely to prevail in proving that his current condition primarily arose out of his injury and surgery is needed.

3

Mr. McLeod seeks temporary disability benefits from June 1, 2023, to present. To award these benefits, an injured worker must establish: "(1) that he or she became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of disability." *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). However, an injured employee is not entitled to temporary partial disability benefits if he was terminated for misconduct. *Id.* at *8.

The Court holds Mr. McLeod is not entitled to temporary partial disability benefits from June 1-12, 2023, because he was terminated for misconduct. Valet Guys had cause to terminate him because he refused to acknowledge that he crashed their van. *Id.*

However, he is entitled temporary total disability under *Jones*. Both Dr. Azzato and Dr. Lescault restricted Mr. McLeod from work beginning June 13. Dr. Lescault took him off work until he has surgery, which has not been performed. Further, Mr. McLeod was unable to return to Dr. Lescault to determine whether the work restrictions were still applicable, and he testified he has not worked.

The Court holds that Mr. McLeod is likely to prevail at the final hearing on an award of temporary disability benefits from June 13, 2023, through the date of this order, which is 47 weeks and six days. The parties agreed to a compensation rate of $368.19. The disability award amount is calculated as $17,304.93 (47 weeks times $368.19) plus $315.54 (six days times $52.59) for a total amount of $17,620.47. Temporary total benefits shall be ongoing in the amount of $368.19 weekly until Mr. McLeod is able to work or reaches maximum medical improvement.

**IT IS ORDERED:**

1. Valet Guys shall provide additional medical treatment including surgery with Dr. Lescault as the authorized treating physician and pay for past medical treatment with Drs. Azzoto and Lescault and physical therapy.

2. Valet Guys shall pay past temporary total disability benefits in a lump sum of $17,620.47 from June 13, 2023, through the date of this order. Mr. McLeod's attorney is entitled to a fee of 20% of this award as his attorney fee.

3. Valet Guys shall pay weekly ongoing temporary total disability benefits from May 13, 2024, in the amount of $368.19 until Mr. McLeod is able to return to work or reaches maximum medical improvement. Mr. McLeod's attorney is entitled to a 20% attorney fee from these benefits.

4. A status hearing is set for **July 3, 2024**, at **10:00 a.m. Eastern Time**. You must call **855-543-5044** to participate in the hearing.

5. Unless interlocutory appeal of this Expedited Hearing Order is filed, compliance with this order must occur by seven business days of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The employer must submit confirmation of compliance by email to WCCompliance.Program@tn.gov by the compliance deadline. Failure to do so may result in a penalty assessment for non-compliance.

6. For compliance questions, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.


**ENTERED May 13, 2024.**


**/s/ Brian K. Addington**
**JUDGE BRIAN K. ADDINGTON**
**Court of Workers' Compensation Claims**


**Appendix**

Exhibits:
1. Affidavit
2. Wage Statement
3. Notice of Filing Form C-32 Standard Form Medical Report
4. Medical Records:
   University Orthopedic Surgeons
   Ortho Tennessee Physical Therapy
   PT Notes of Ryan Williams
   Dr. John Azzato
   Dr. Eric Lescault
5. Deposition of Dr. Eric Lescault
6. Deposition of Dr. Joshua Moss

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on May 13, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Glen Rutherford, Employee's Attorney | | | X | grutherford@knoxlawyers.com nenashort@knoxlawyers.com |
| William Carver, Employer's Attorney | | | X | wcarver@kramer-rayson.com jwatkins@kramer-rayson.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*